Frederick Coles, III, Esq.
LAW OFFICES OF FREDERICK COLES, III
4802 South 1110 East
Salt Lake City, Utah 84117
Tel. No. (908) 757-4977
E-Mail: FColes@coleslegal.com
Attorneys for Plaintiff, Life Signings LLC
　dba Deals Door Delivered

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| LIFE SIGNINGS LLC dba DEALS DOOR DELIVERED, a Las Vegas Limited Liability Company,<br><br>　　　　　*Plaintiff,*<br><br>　　vs.<br><br>ECOM ELITE CONSULTING, LLC; DBC LIMITED; JASON GLIDDEN; MITCH HOLT; JONATHAN SAWYER; JOHN DOES 1-5 (said names being fictitious Individuals) and ABC-XYZ CORPORATIONS (said names being fictitious Business Entities),<br><br>　　　　　*Defendants*. | Civil Action No.<br><br>COMPLAINT AND<br>JURY TRIAL DEMAND |

　　　　Plaintiff, Life Signings LLC dba Deals Door Delivered, is a sole member Las Vegas limited liability company with its sole member, at all times relevant hereto, residing at 768 E. Clark Circle, Orange, New Jersey 07050, by and through its attorneys, complaining of defendants, eCom Elite Consulting, LLC, with its principal offices located at 116 W. Main Street, Rockton, Illinois 61072, DBC Limited, with its principal offices located at 1031 Davis Road, Elgin, Illinois 60123, Jason Glidden, the Chief Executive Officer of eCom Elite Consulting, LLC, maintains a business address at 116 W. Main Street, Rockton, Illinois 61072,

Mitch Holt, the owner of DBC Limited maintains a business address at 1031 Davis Road, Elgin, Illinois 60123, and Jonathan Sawyer, who maintains a business address at DBC Limited, 1031 Davis Road, Elgin, Illinois 60123, as follows:

## INTRODUCTION

1. Plaintiff brings this action in this Court based upon diversity of citizenship jurisdiction. The basis of plaintiff's claims against defendants is that defendants' wrongful conduct has caused plaintiff damages in an amount in excess of $75,000.00. Plaintiff's claims are based in conspiracy, fraud and misrepresentation. As a result of defendants' wrongful conduct, plaintiff seeks compensatory and punitive damages against defendants.

## JURISDICTION AND VENUE

2. This Court has diversity jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(a) in that the jurisdiction amount exceeds $75,000.00 and no plaintiff shares a state of citizenship with any of the defendants. Plaintiff is a citizen of the State of New Jersey in that the named plaintiff is registered as a Las Vegas, Nevada, a sole member limited liability company. The citizenship of such of a limited liability company is based upon the citizenship of the sole member. In this action, the sole member resides and maintains her citizenship in Orange, New Jersey. None of the defendants named in this action maintain citizenship in the State of New Jersey.

3. Venue is appropriate in this Vicinage in that plaintiff resides in the City of Orange, County of Essex, State of New Jersey.

## PARTIES

4. Plaintiff is registered as a sole member Las Vegas, Nevada, limited liability company. The sole member of the limited liability company resides in Orange, New

Jersey. Plaintiff, by way of defendants' conspiratorial conduct, was fraudulently induced to enter into a business/investment arrangements with defendants based upon false and misleading statements by individuals and/or in concert by defendants so as to induce plaintiff to tender money and payments in furtherance of defendants' scheme to defraud plaintiff.  In further of defendants' fraud and conspiracy, plaintiff was induced to enter into a written agreement with defendant, eCom Elite Consulting LLC, titled "ONLINE WHOLSEALE RESELLER STORE CLIENT SUBSCRIPTION AGREEMENT Rev. 9 | 04/14/2021" that sets forth the terms and provisions of a business arrangement whereby defendants will "supply account management services in replication of its own business model in the wholesale product market business (collectively the '**Services**') and [plaintiff], in accordance with the Services provided by the [defendants], will run its own wholesale product market online store within the Amazon marketplace ('**Online Store**')."

5. On information and belief, defendant, eCom Elite Consulting, LLC (hereinafter referred to as "eCom"), with its principal offices located at 116 W. Main Street, Rockton, Illinois 61072, is an Illinois limited liability company, that conducted business with plaintiff while plaintiff was located and situated within the State of New Jersey.  This defendant entered into a business arrangement with plaintiff to "supply account management services in replication of its own business model in the wholesale product market business (collectively the '**Services**') and [plaintiff], in accordance with the Services provided by the [defendants], will run its own wholesale product market online store within the Amazon marketplace ('**Online Store**')."

6. On information and belief, defendant, DBC Limited (hereinafter referred to as "DBC"), with its principal offices located at 1031 Davis Road, Elgin, Illinois 60123, is an

Illinois limited liability company, that assisted in the performance of business with plaintiff and defendant, eCom, while plaintiff was located and situated within the State of New Jersey. This assistance was provided so as to further perpetuate the business arrangement between plaintiff and defendant, eCom, in connection with eCom "supply[ing] account management services in replication of its own business model in the wholesale product market business (collectively the '**Services**') and [plaintiff], in accordance with the Services provided by the [defendants], will run its own wholesale product market online store within the Amazon marketplace ('**Online Store**')."

7. On information and belief, defendant, Jason Glidden, is the Chief Executive Officer of defendant, eCom, and, as such, maintains an office at 116 W. Main Street, Rockton, Illinois 61072. This defendant acted individually and/or in concert with the other named defendants who were engaged in fraudulent and conspiratorial conduct so as to induce Plaintiff's association with defendants for the purpose of enticing Plaintiff to enter into the "ONLINE WHOLSEALE RESELLER STORE CLIENT SUBSCRIPTION AGREEMENT" and pay monies to defendants in connection therewith.

8. On information and belief, defendant, Mitch Holt, is the owner of defendant, DBC, and, as such, maintains and office at 1031 Davis Road, Elgin, Illinois 60123. This defendant acted individually and/or in concert with the other named defendants who were engaged in fraudulent and conspiratorial conduct so as to induce Plaintiff's association with defendants for the purpose of enticing Plaintiff to enter into the "ONLINE WHOLSEALE RESELLER STORE CLIENT SUBSCRIPTION AGREEMENT" and pay monies to defendants in connection therewith.

9. On information and belief, defendant, Jonathan Sawyer, is an employee of

defendant, DBC, who holds the title of "Sales & Contract Lead", and, as such, maintains and office at 1031 Davis Road, Elgin, Illinois 60123. This defendant acted individually and/or in concert with the other named defendants who were engaged in fraudulent and conspiratorial conduct so as to induce Plaintiff's association with defendants for the purpose of enticing Plaintiff to enter into the "ONLINE WHOLSEALE RESELLER STORE CLIENT SUBSCRIPTION AGREEMENT" and pay monies to defendants in connection therewith.

10. Defendants, John Does 1-5, are individuals who are unknown to Plaintiff at this time who, at all times relevant hereto, were either employed by, affiliated and/or associated with defendants and were, in part, responsible for the fraudulent and conspiratorial conduct that Plaintiff was forced to endure in connection with the business arrangement(s) described herein resulting in Plaintiff being damaged. These unknown defendants acted individually and/or in concert with the other named defendants who were engaged in fraudulent and conspiratorial conduct so as to induce Plaintiff's association with defendants for the purpose of enticing Plaintiff to enter into the "ONLINE WHOLSEALE RESELLER STORE CLIENT SUBSCRIPTION AGREEMENT" and pay monies to defendants in connection therewith.

11. Defendants, ABC-XYZ Corporations, are business entities who are unknown to Plaintiff at this time who, at all times relevant hereto, were either employed by, affiliated and/or associated with defendants and were, in part, responsible for the fraudulent and conspiratorial conduct that Plaintiff was forced to endure in connection with the business arrangement(s) described herein resulting in Plaintiff being damaged. These unknown defendants acted individually and/or in concert with the other named defendants who were engaged in fraudulent and conspiratorial conduct so as to induce Plaintiff's association with defendants for the purpose of enticing Plaintiff to enter into the "ONLINE WHOLSEALE RESELLER STORE

CLIENT SUBSCRIPTION AGREEMENT" and pay monies to defendants in connection therewith

12. All defendants named herein conducted business within the State of New Jersey and, as such, purposely availed themselves of the laws of the State of New Jersey.

## FACTS COMMON TO ALL COUNTS

13. Plaintiff repeats and realleges the allegations set forth in all prior paragraphs and incorporates same herein as though set forth verbatim and at length.

14. On August 5, 2021, Plaintiff and eCom signed an "ONLINE WHOLSEALE RESELLER STORE CLIENT SUBSCRIPTION AGREEMENT" (hereinafter referred to as the "Agreement").

15. The Agreement established a relationship whereby Defendants would collectively establish and manage an Amazon-based online store for Plaintiff.

16. The Agreement called for Plaintiff to purchase items from Defendants' "wholesale product supplier" (hereinafter referred to as "Wicked Country Distribution d/b/a W.C. Distribution"). Plaintiff would then resell those items on her Amazon-based online store.

17. Pursuant to the Agreement, Defendants promised to provide to Plaintiff an "existing, functioning, and proven profitable business model utilizing the experience services and professionally trained staff" of eCom.

18. Pursuant to the Agreement, Defendants promised to provide account management services for Plaintiff's wholesale product market business within the Amazon marketplace.

19. In exchange for Defendant's services, Plaintiff paid $2,527.00 in "Onboarding Fees" and a one-time buy-in payment of $55,000.00.

20. The Agreement established a profit-sharing arrangement: Plaintiff would receive 70% of the Monthly Net Product Sales Profit, and Defendants would receive 30% of the Monthly Net Product Sales Profit.

21. Pursuant to the Agreement, Plaintiff's store would begin selling products after a one-month start-up period.

22. The initial term of the Agreement was a period of five years.

23. Before signing the Agreement, Plaintiff, via e-mail to Defendants, expressed interest in purchasing Defendants' "FBA Service."

24. FBA is an acronym for "Fulfilled by Amazon." An FBA "store" sends products directly to an Amazon warehouse or distribution center where they are stored until a purchase is made. Then, the FBA "store" owner lists and sells those same items directly on Amazon's website. Once purchased, Amazon "fulfills" the order: Amazon packages the product, ships to the buyer, and handles returns and exchanges.

25. In response to Plaintiff's e-mail expressing interest in "FBA Services," Defendants sent a link to a video where they discussed "exactly what [Defendants] offer."

26. In the video, Holt promises to provide *direct brand relationships* whereby Defendants purchase brand-name items directly from the brands or manufacturers at wholesale, rather than from retailers such as Walmart.

27. Defendants represented to Plaintiff that, if she purchased their FBA services, Plaintiff would buy these brand-name items at wholesale prices and then resell them on her FBA store.

28. Defendants represented to Plaintiff that, if she purchased their services, Defendants would operate her store under an FBA model.

29. Defendants provided financial projections to Plaintiff that reflected the anticipated profits for Plaintiff's FBA store if she purchased Defendant's services.

30. In their projections, Defendants represented to Plaintiff that, if she purchased their FBA Services, her store's sales could total $100,000.00 per month after year 1 and $200,000.00 per month after year 2.

31. In their projections, Defendants represented to Plaintiff that, if she purchased their FBA services, her store's profit margins could be 15-18% in the first 2-3 months; 20-30% after 6 months; and 30-40% after 12 months.

32. On their website, Defendants represent that in their first full year of business (2020), they "successfully launched 57 stores and saw single-store sales of up to $204,000.00/month at 17% profit." Defendants further represented such profits reached 30-40% after the first year of FBA store operations.

33. Despite Defendants' representations, Defendants never intended to buy brandname items at wholesale prices for Plaintiff to offer for sale in her FBA store.

34. Thus, despite Defendants' representations, Defendants never intended to operate Plaintiff's store as an FBA store.

35. Plaintiff relied on Defendants' representations regarding their supposed brand relationships and FBA store implementation services.

36. Plaintiff relied on Defendants' representations that they had the ability to procure brand-name items at wholesale prices.

37. Plaintiff relied on Defendants' representations regarding Plaintiff's projected profits if she purchased Defendants' FBA Services.

38. Plaintiff relied on Defendants' representations that, if she purchased their services, Defendants would establish and manage her store on an FBA model.

39. Defendants made the above referenced representations in order to induce Plaintiff to sign the Agreement and pay $57,527.00 to acquire their services together with $2,527.00 in Onboarding Fees.

40. Based on Defendants' false representations, Plaintiff signed the Agreement.

41. Once the Agreement was executed, Defendants did not establish and/or operate an FBA store for Plaintiff as promised.

42. By way of example, Defendants did not supply any items for sale in Plaintiff's FBA store for approximately 4 months.

43. After Plaintiff inquired as to why her FBA store was not operational as promised, Defendants began stocking Plaintiff's FBA store with items disguised as wholesale brand-name products: Defendants simply purchased items from other retailers (like Walmart) and sent them to an Amazon warehouse to await fulfillment by Amazon.

44. Based on Defendants' projections, Plaintiff expected to earn at least $2,500,000.00 in profits over the life of the Agreement. Because Defendants never provided the FBA services they promised, Plaintiff was deprived the profits falsely promised by Defendants.

45. Based on Defendants' projections, Plaintiff expected to sell the FBA store at the end of the Agreement's term, with a return of equity of at least $1,500,000.00. Because Defendants never provided the FBA services they promised, Plaintiff will never receive such return of equity.

46. Plaintiff paid Defendants a $55,000.00 buy-in fee and $2,527.00 in Onboarding Fees to purchase FBA services that Defendants never performed.

47. DBC, eCom, Glidden, Sawyer and Holt worked in concert to induce Plaintiff into signing the Agreement.

48. DBC claims to provide "holistic management of Amazon and Amazon FBA Stores." *See https://www.dbclimited.com/about/*

49. Defendants collectively represented to Plaintiff that Glidden and Holt jointly own and manage a wholesale distribution company, Wicked Country Distribution, and that brand-named items would be provided for Plaintiff to sell in her FBA store.

50. Defendants collectively represented to Plaintiff that Glidden and Holt jointly own eCom and that they would establish and manage for Plaintiff an FBA store.

51. As a condition to Plaintiff signing the Agreement, defendants collectively required Plaintiff to sign a Non Disclosure Agreement with "eCom Elite Consulting/DBC Limited."

52. The purportedly required Non Disclosure Agreement was yet another way in which these Defendants fraudulent induced Plaintiff to enter into the Agreement.

## COUNT I
### (Fraud / False Representation and/or Misrepresentation)

53. Plaintiff repeats and realleges the allegations set forth in all prior paragraphs and incorporates same herein as though set forth verbatim and at length.

54. The above alleged acts by Defendants constitute fraud or false representation.

55. Defendants made false representations including that they had direct brand relationships and the ability to buy brand-name items at wholesale prices; that Defendants would establish and operate Plaintiff's store on an FBA model; that Plaintiff would purchase brand-name items at wholesale prices directly from brands or manufacturers; that Plaintiff could make millions in profits over the life of the Agreement; and that Plaintiff would receive further millions in equity upon the sale of her FBA store.

56. Defendants knew the above representations were false or that they never intended to offer the promised FBA services to Plaintiff.

57. Defendants made the above representations to induce Plaintiff to purchase their services.

58. Plaintiff signed the Agreement and paid Defendants $57,527.00 and related fees in reliance on Defendants' representations.

59. Plaintiff has been damaged by such misrepresentations, including the $57,527.00 she paid for Defendants' services and Onboarding Fees, the million in profits Plaintiff expected over the life of the five-year Agreement, and the further millions she was denied in return of equity upon the ultimate sale of her FBA store.

## COUNT II
### (Civil Conspiracy to Commit Fraud)

60. Plaintiff repeats and realleges the allegations set forth in all prior paragraphs and incorporates same herein as though set forth verbatim and at length.

61. The above alleged acts by Defendants constitute conspiracy to commit fraud.

62. Defendants worked in concert to make fraudulent misstatements.

63. Defendants' joint objective was to induce Plaintiff to sign the Agreement and pay $57,527.00 for their services.

64. Plaintiff has been damaged by Defendants' conspiracy.

**WHEREFORE,** Plaintiff, Life Signings LLC dba Deals Door Delivered, requests judgment against Defendants, eCom Elite Consulting, LLC, DBC Limited, Jason Glidden, Mitch Holt, and Jonathan Sawyer, jointly and severally, as follows:

a. Award Plaintiff restitution and compensatory damages for direct payments made to Defendants that total $57,527.00, inclusive of Onboarding Fees for the fraudulent services offered to Plaintiff by Defendants

b. Award Plaintiff other compensatory damages in an amount in excess of $4,000,000.00 against Defendants to be determined at the time of trial that represents lost profits and lost equity value;

c. Award Plaintiff punitive damages in an amount to be determined at the time of trial;

d. Award Plaintiff its costs and reasonable attorney's fees;

e. Award Plaintiff pre-judgment interest; and

f. Such other relief as the Court may deem proper and just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

LAW OFFICES OF FREDERICK COLES, III

/s/   Frederick Coles, III

_____
Frederick Coles, III

                                  LAW OFFICES OF FREDERICK COLES, III
                                  4802 South 1110 East
                                  Salt Lake City, Utah 84117
                                  Tel. No. (908) 757-4977
                                  E-Mail:  fcoles@coleslegal.com
                                  Attorneys for Plaintiff, Life Signings LLC
                                   dba Deals Door Delivered

Dated:  September 20, 2022